UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| SUSAN BROWN, derivatively on behalf of TOUT, INC., <br>     *Plaintiff* <br> v. <br> DANIEL WILDERMUTH, <br>     *Defendant*, <br>   and <br> TOUT, INC., a Delaware Corporation, <br>     *Nominal Defendant.* | |
| **VERIFIED COMPLAINT** | |

Plaintiff Susan Brown ("Plaintiff") brings this shareholder derivative action on behalf of Nominal Defendant Tout, Inc. ("Tout" or the "Company") and against Daniel Wildermuth ("Wildermuth" or "Defendant"), who at all times relevant was, and upon information and belief remains, Tout's director and control person. Based on the allegations set forth below, Plaintiff asserts claims on behalf of the Company for violations of state law involving breaches of fiduciary duties, corporate waste, and unjust enrichment. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning herself and, as to all other matters, upon information and belief based on the investigation of undersigned counsel.

**THE PARTIES**

1. Plaintiff Susan Brown is and was at all times relevant a citizen of the State of Arizona. She invested $75,000 in Tout's Series D Offering through her self-directed IRA on or around March 20, 2017, and another $11,250 in that same offering

on August 18, 2018. Plaintiff has continually held these shares from the date they were purchased through the present.

2. Defendant Daniel Wildermuth is and was at all times relevant a citizen of the State of Florida. Wildermuth appointed himself Chairman of the Board and CEO of Tout on October 15, 2019 and, upon information and belief, still holds these titles, even though Tout itself is no longer operational.

3. Nominal Defendant Tout Inc. is a Delaware corporation that at all times relevant was headquartered in San Francisco, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between the Plaintiff and the Defendants.

5. Venue is appropriate under 28 U.S.C. § 1391(b)(2)–(3) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant Wildermuth is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

6. Tout was formed by Michael Downing in 2010 as a spinoff from the Stanford Research Institute.

7. Headquartered in San Francisco, California, the Company operated for nearly 10 years before abruptly ceasing operations and liquidating its assets under mysterious circumstances.

8. Tout marketed itself as a "TV network for the Internet" offering a new form of brand engagement that utilized patented artificial intelligence technology to

deliver targeted/personalized videos and advertisements to individuals accessing Tout's partner websites, while also providing data analytics.

9. Tout raised capital through a series of fundraising rounds. Its Series A round launched in February 2011 and raised $2 million on the basis of a $5 million pre-money valuation.

10. In June 2013 Tout completed a Series B round that raised a collective $12 million from World Wrestling Entertainment (also a Tout customer), Phil Knight, Gordy Crawford, and others on the basis of a $45 million pre-money valuation.

11. In July 2016 Tout completed a Series C round that raised another $26 million, primarily from institutional/private equity funds, on the basis of a $60 million pre-money valuation.

12. Defendant Wildermuth invested as part of the Series C round through his publicly traded fund, the "Wildermuth Fund" (sometimes referred to as "WF"), which focuses primarily on early-stage private equity positions in various asset classes including technology, real estate, health care, energy, and others.

13. Tout's star seemed to be continually rising. In late 2017, ProSieben, a German mass media and digital company listed on the Frankfurt Stock Exchange, proposed to acquire Tout at a $300 million valuation. The Company refused this offer as it believed the valuation was too low.

14. Around this same time, Tout launched a Series D "preferred" round intended to raise operating capital that would be used to develop a new platform that later became known as "Giga Pro."

15. Tout's Series D offering was based on a pre-money valuation of $125 million.

16. Per the terms of the Series D round, investors were entitled to dividends of 8% per annum in preference to investors from the Series A, B, or C rounds. Additionally, in the event of any liquidation or winding up of the Company, Series D holders would recover their original purchase price, plus any unpaid dividends, again with preference over previous investors.

17. In early 2019, Defendant Wildermuth was installed on Tout's board of directors, in the hope that his experience as an institutional fund advisor and otherwise would help guide the Company through a contemplated acquisition following the completion of the Giga Pro platform.

18. Another company, IZON, was looking at acquiring Tout around this time. Although the Company had a cash shortage, Wildermuth rejected the acquisition offer as "too low" and openly told Tout's shareholders that he would continue to fund the Company for as long as necessary while Giga Pro was completed and a suitable acquisition opportunity materialized.

19. Consistent with this pledge, Wildermuth, acting through WF, paid off approximately $3 million of Tout's secured debts, assuming a security interest in all of the Company's assets as collateral.

20. On October 15, 2019, Wildermuth quietly forced Tout's founder and then-CEO, Michael Downing, to resign.

21. All of Tout's board members immediately resigned in protest, leaving Wildermuth as the Company's only Board member. Upon information and belief, Wildermuth also assumed the role of the Company's CEO.

22. As a board member and officer, Wildermuth owed fiduciary duties of care, loyalty, and good faith and fair dealing to Tout.

23. Wildermuth then installed Kevin Wallrath, who was Senior Vice President of Investment Management at WF, as Tout's other board member.

24. Wallrath was dominated by Wildermuth and made decisions for the benefit of WF, not Tout.

25. Together, Wildermuth and Wallrath were the only persons authorized to make decisions on behalf of Tout after October 15, 2019.

26. On November 27, 2019, Wildermuth caused Tout to issue a cryptic "Notice of Disposition" to shareholders disclosing that Tout would sell all of its assets on December 10, 2019—less than two weeks later—through a sale that would take place at WF's office in Ponte Vedra Beach, Florida.

27. Wildermuth later told shareholders that he made the decision to shut down and liquidate Tout's assets after an unspecified CEO of a "competitor" conducted an evaluation of the Company's books, records, and operations at Wildermuth's request.

28. According to Wildermuth, that individual had provided Wildermuth with a verbal report suggesting that "there was nothing there" in terms of operations,

the Company had significant outstanding debts, and the Company was valueless as a result.

29.  Wildermuth never sought a second opinion, nor was the unnamed advisor's verbal report ever put into a writing that was circulated to Tout's shareholders.

30.  The data and assumptions giving rise to Wildermuth's sudden decision to cease Tout's operations were not shared with an independent committee or other board members.

31.  The decision to shutter Tout and liquidate its operations was made solely by Wildermuth, on the basis of this unnamed advisor's purported report.

32.  Wildermuth's decision was particularly suspect in light of his statements made only a few months prior—after he was installed as a member of the Board and thus given access to the Company's books and records—that he would continue funding the Company as "long as necessary" for the Company to monetize its Giga Pro platform. Indeed, at that juncture Wildermuth had been so confident in Tout's outlook that he assumed $3 million of the Company's debts.

33.  On December 10, 2019, Tout's assets went up for auction (the "Auction").

34.  The Auction was conducted at the office of the Wildermuth Fund in Ponte Vedra Beach, Florida.

35.  As Chairman and CEO of Tout, Wildermuth was obligated to maximize the value Tout stood to receive from the liquidation of all of its assets.

36. Instead, Wildermuth used his status as a secured creditor to "credit bid" on those assets, purchasing them for the value of the debt that was owed to his Fund. Thereafter, Tout's valuable Giga Pro platform, which had been developed using funds raised by Tout's Series D preferred investors, became as asset of the Wildermuth Fund.

37. Tout's assets were sold to an entity (WF) in which Tout's fiduciary had a controlling interest and thus a concomitant fiduciary duty—a classic "conflicted interest" transaction in which Wildermuth sat on both of sides of the negotiating table.

38. Wildermuth did not take steps to address the actual conflict of interest that arose out of the fact that he sat on both sides of the sale transaction.

39. Following the Auction, Tout ceased operations. Though technically still an active corporation, Tout has not conducted operations or generated any revenue since the Auction.

40. Although Tout supposedly had significant outstanding debts, its creditors never instituted any involuntary bankruptcy or other proceeding intended to protect their rights. This undermines Wildermuth's assertions that Tout's obligations to its creditors were a driving force behind Wildermuth's decision to liquidate the Company—a company that had a nine-figure valuation just two years earlier.

41. After acquiring Tout's assets, which included the Giga Pro platform, Wildermuth/WF deployed them for the benefit of another entity under Wildermuth's control, "Giga Pro, Inc."

42. Giga Pro, Inc's value was derived from the Giga Pro platform that Tout developed and that Wildermuth sold for his own benefit.

43. Tout's assets, including its Giga Pro platform, were worth far more than the $3 million credit bid that Wildermuth acquired them for.

44. This is evidenced by, *inter alia*, the Form N-CSRs that the Wildermuth Fund (previously defined as "WF") is obligated to file with the SEC on a semi-annual basis, which essentially re-booked the full value of WF's investment in Tout as an investment in Giga Pro, Inc. (now known as "Reach, Inc.") worth between $8 and $12 million over the past two years.

45. As a result of Wildermuth's wrongful conduct, Tout lost valuable assets without receiving fair value in return, and the Series D preferred shareholders were divested of the dividends and liquidation preferences they stood to receive under the terms of their Agreements with the Company. The Company's market capitalization has likewise been eviscerated, having lost millions of dollars as a result of the conduct described in this Complaint.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

51. Plaintiff brings this action derivatively in the right and for the benefit of Tout to redress injuries suffered by the Company as a direct result of Defendant's

breaches of fiduciary duties and unjust enrichment. Tout is named as a nominal defendant solely in a derivative capacity.

52. Plaintiff will adequately and fairly represent the interests of Tout in enforcing and prosecuting its rights.

53. Plaintiff became a Tout shareholder March 2017 and has held her shares continuously since that date.

54. Plaintiff did not make a pre-suit demand on Tout's "Board" to pursue this action because such a demand would have been a futile and useless act.

55. At the time this action was commenced, Tout's Board consisted of only two individuals, Defendant Wildermuth and one of his employees.

56. These individuals are not disinterested and independent with respect to the acts and omissions alleged. Both of them approved and/or permitted the wrongs alleged to occur and participated in efforts to conceal or disguise those wrongs from the Company's stockholders.

57. Wildermuth faces personal liability for the breaches of the duties of trust, loyalty, good faith, candor, oversight, reasonable inquiry, supervision, and due care described. If he were to bring a suit on behalf of Tout to recover damages sustained as a result of the misconduct alleged, he would expose himself to significant liability. This is something he would not do. For this reason, demand is futile.

58. Additionally, Wildermuth benefitted personally from the breaches of these duties, which in turn allowed another entity he controlled, WF, to obtain valuable assets for less than fair value.

59. Tout's other "director," Wallrath, is an employee of WF, has legal and contractual obligations to act for WF's benefit, and thus also benefitted personally from the breaches of the duties described.

60. Wildermuth and his employee, Wallrath, are therefore directly interested in, and incapable of disinterestedly considering, a demand to bring the claims asserted here. As principal beneficiaries of the wrongdoing alleged, they could not fairly and fully prosecute such a suit even if they instituted it.

61. Additionally, Tout is no longer operational, and even assuming, *arguendo*, that Wildermuth would investigate and prosecute himself for the conduct alleged in this Complaint (which he would not), Tout no longer has the resources or personnel to do adequately do so.

62. For these reasons, making demand on Tout to investigate the actions described in this Complaint would be futile.

63. Accordingly, Plaintiff has not made—and should be excused from making—a pre-filing demand on the Board to initiate this action.

## CAUSES OF ACTION

### Count One: Breach of Duties

65. Plaintiff incorporates all prior allegations.

66. By reason of his positions as a director and officer of Tout, and because of his ability to control the business and corporate affairs of the Company, Wildermuth owed, and owes, the Company and its shareholders fiduciary obligations of good faith, fair dealing, loyalty, due care, reasonable inquiry, and oversight, and

was and is required to use his utmost ability to control and manage Tout in a fair, just, honest, and equitable manner.

67. Wildermuth was, and is, required to act in furtherance of the best interests of Tout and its shareholders so as to benefit all shareholders equally, and not in furtherance of his own personal interest or benefit. He violated and breached his fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, and oversight on the basis of the foregoing allegations.

68. Wildermuth knowingly, recklessly, and negligently made the decision to liquidate Tout on the basis of information that was not sufficient to support that decision and that was not adequately considered for the benefit of the Company. His actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

69. Additionally, Wildermuth knowingly, recklessly, and negligently made the decision to sell Tout's assets, including Giga Pro, to a fund that he controlled (WF) for less than fair market value and without due deliberation for the Company's interest. In this regard Wildermuth sat on both sides of the sale transaction and acted for his own benefit and gain, breaching his duties of care, loyalty, and good faith and fair dealing.

70. Wildermuth facilitated Tout's demise for his own gain and continues to benefit from the Tout assets he acquired at the Auction.

71. As a direct and proximate result of Wildermuth's failure to discharge his fiduciary obligations, Tout has sustained significant damages. Wildermuth is liable to the Company for the damages he has caused.

### Count Two: Corporate Waste

72. Plaintiff incorporates all prior allegations.

73. As of late 2017, Tout was valued at $125 million, and in that same year turned down an offer to purchase the Company at a valuation of $300 million.

74. This value was still present when Wildermuth joined Tout's Board in or around March 2019. Indeed, he rejected an offer to purchase the Company, and further committed to continue funding its operations for as long as necessary while its Giga Pro platform was developed and monetized. Consistent therewith, Wildermuth assumed $3 million of Tout's debt, further demonstrating his belief in the Company.

75. Just six months later, as its Giga Pro platform was nearing completion, Wildermuth unilaterally decided that Tout had no value whatsoever and decided to liquidate the Company on a moment's notice.

76. Wildermuth thus caused Tout to sell Giga Pro for less than fair value to a company in which he was personally interested, and to shutter operations immediately thereafter. This transaction was so one-sided and ill-informed that it meets the standard for corporate waste.

77. Wildermuth is thus liable for all damages occasioned by this waste, including Tout's total loss of shareholder value as the Company is now worthless. Meanwhile, the recipient of the Giga Pro platform, Reach, continues to have a positive

valuation—over the last two years WF has valued its interest in Reach at between $8 million and $11 million.

### Count Three: Unjust Enrichment (Alternative Theory)

78. Plaintiff incorporates all prior allegations.

79. Wildermuth was unjustly enriched at the expense of, and to the detriment of, Tout and its shareholders. Specifically, he was unjustly enriched by acquiring ownership of Giga Pro and Tout's other assets for less than fair value through an unfair conflicted interest transaction.

80. Plaintiff, as a shareholder and representative of Tout, seeks restitution from Wildermuth and seeks an order from this Court disgorging all profits, benefits, and other compensation he may have obtained through the wrongful conduct, fiduciary breaches, and/or other acts and omissions described in this Complaint.

81. Plaintiff has no adequate remedy at law.

### DEMAND FOR JURY TRIAL

82. Plaintiff demands a trial by jury on all counts so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

  I. For all recoverable compensatory and other damages sustained by Tout;

  II. An award of attorneys' fees and costs to counsel for Plaintiff and Tout's shareholders to the extent permitted by applicable law; and

III. Such other relief as the Court deems just and proper.

                                                  Respectfully submitted,

*/s/ Ashlie Case Sletvold*
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Ashlie Case Sletvold
6370 SOM Center Rd., Suite 108
Cleveland, OH 44139
Telephone: (216) 260-0808
Facsimile: (216) 258-0161
asletvold@peifferwolf.com

Daniel Centner (will seek admission pro hac vice)
Grace Van Hancock (will seek admission pro hac vice)
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Telephone: (504) 523-2434
Facsimile: (504) 608-1465
dcentner@peifferwolf.com
ghancock@peifferwolf.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| SUSAN BROWN, derivatively on behalf of TOUT, INC., <br>    *Plaintiff* <br> v. <br> DANIEL WILDERMUTH, <br>    *Defendant,* <br>  and <br> TOUT, INC., a Delaware Corporation, <br>    *Nominal Defendant.* | |
| **Verification under 28 U.S.C. § 1746** | |

I, **Susan Brown,** hereby depose and state that I have read the foregoing Verified Complaint, and that all of the allegations therein concerning me and my investments are true and correct, and that I believe all other matters to be true to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 25th, 2022


      */s/Susan Brown*
      **Susan Brown**