# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKONSVILLE DIVISION

| | |
|---|---|
| SUSAN BROWN, derivatively on behalf of TOUT, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>DANIEL WILDERMUTH,<br><br>*Defendant,*<br>and<br><br>TOUT, INC., a Delaware Corporation,<br><br>*Nominal Defendant.* | CASE NO. 3:22-cv-1301-HLA-PDB<br><br><br>JUDGE HENRY LEE ADAMS, JR.<br><br>MAGISTRATE JUDGE PATRICIA BARKSDALE |
| **AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF** | |

Plaintiff Susan Brown and Defendant Daniel Wildermuth (together with Mrs. Brown, "Parties"), by their counsel, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1") and in response to the Court's March 5, 2024 Order denying the parties' prior motion for preliminary approval of a settlement agreement without prejudice to filing an amended motion [*see* ECF No. 44, hereafter "March Order")], respectfully submit the following *Amended Joint Motion for Preliminary Approval of Derivative Settlement*[1] (hereafter,

---

[1] The parties have opted to submit this Amended Joint Motion intended to address the items identified by the Court in its March Order. For the Court's convenience, redlined comparisons of this Amended Motion, the Parties' Amended Stipulation of Settlement, and Amended Notice against the Parties' prior

1

"Motion") with the parties' Amended Stipulation of Settlement and proposed Notice attached hereto as Exhibits B and C, respectively. The parties' Memorandum in support of this motion is contained herein, pursuant to Local Rule 3.01(a) and in compliance with the Court's March Order.

WHEREFORE, for the reasons set forth in the Parties' Memorandum, the Parties jointly request that the Court (i) preliminarily approve the proposed settlement; (ii) approve the proposed method of notice; (iii) approve the contents of the parties' Amended Stipulation of Settlement submitted in support of this Motion; and (iv) enter any other such relief it deems just and proper.

## INTRODUCTION

On November 25, 2022, Susan Brown ("Mrs. Brown") filed the instant derivative suit on behalf of Tout, Inc., a Delaware corporation ("Tout"), against Daniel Wildermuth ("Mr. Wildermuth"), in his capacity as a director of Tout, in relation to a public auction sale of all the assets of Tout on December 10, 2019 ("Auction") that was conducted by the Wildermuth Endowment Fund ("WEF"), a secured creditor of Tout.

Mrs. Brown alleged Mr. Wildermuth Breached his Duties as director of Tout, created Corporate Waste through his actions, and was Unjustly Enriched

---

submission are attached hereto as Exhibit A in globo.

by the sale of Tout to WEF. Wildermuth has strenuously denied any wrongdoing and liability. Mr. Wildermuth maintains that he made no decision in his capacity as a Tout board member to liquidate Tout's assets or to hold a public auction sale to do so. Instead, Mr. Wildermuth contends that WEF, Tout's largest secured creditor, properly and legally conducted the Auction under Article 9 of the UCC.

Mr. Wildermuth filed a Motion to Dismiss ("Motion") on the basis of the foregoing, arguing, *inter alia*, that Mrs. Brown's claims were not actionable under Delaware law. Mrs. Brown opposed the Motion, and after full briefing on August 22, 2023, the Court denied the Motion. Prior to the Court's decision on the Motion, the Parties exchanged Initial Disclosures and other documents, including documents establishing a lack of insurance coverage available to satisfy any damages ultimately awarded in this lawsuit, as well documents concerning Mr. Wildermuth's personal net worth.

The Parties both believe in the strength of their respective claims and defenses, but also recognize significant risks of proceeding with further litigation in light of the above. After months of litigation and negotiation, the Parties believe they have reached a fair, adequate, and reasonable settlement of this shareholder-derivative action. Accordingly, the Parties now jointly file this Joint Motion seeking the Court's preliminary approval of the Parties'

proposed settlement under Federal Rule of Civil Procedure 23.1 ("Rule 23.1" or "23.1").

Pursuant to Rule 23.1, this shareholder-derivative action regarding Nominal Defendant Tout may only be settled and dismissed with the Court's approval. The Court previously denied the parties' motion to approve the proposed settlement on a without-prejudice basis [*see* ECF 44, previously defined as the "March Order"], and consistent therewith, the parties are now submitting this Amended Joint Motion to address the issues identified by the Court in the March Order  Through this Motion the Parties now seek preliminary approval of their Amended Stipulation of Settlement. (See Ex. B.)

I.  **BACKGROUND OF THE LITIGATION & PROPOSED SETTLEMENT**

A.  **Background**

This is a derivative suit brought by Mrs. Brown on behalf of Tout, a now defunct Delaware corporation, against Mr. Wildermuth, in relation to a public auction sale of all the assets of Tout on December 10, 2019 that was conducted by WEF, a secured creditor of Tout. Tout, initially formed in 2010 as Kicklight Labs, Inc., was an internet social networking and messaging service provider that enabled users to send and view 15-second videos, known as "touts."

WEF was, at the time of the Auction, both a shareholder and the single largest creditor of Tout. Tout had a number of equity funding rounds, and

WEF became an investor in Tout in or about 2016, with an initial investment of $500,000. WEF subsequently made several million dollars of additional investments between 2017 and 2019. Mr. Wildermuth joined the Tout board of directors in the spring of 2019. Then, after several board member resignations, Mr. Wildermuth served as CEO and Chairman of the Board beginning on or about October 15, 2019.

Early in 2019, the senior secured lender to Tout, Cathay Bank, threatened to exercise its rights under its loan documents to enforce its security interest and collection rights against the assets of Tout and shut down the business. To prevent that from happening, WEF acquired the loan and security interest of Cathay Bank by paying off approximately $3 million of Tout's secured debts. As a result, Tout was able to continue its operations. Furthermore, because Tout was unable to fund its own operations, WEF supplied Tout with additional capital throughout 2019. However, late in 2019, WEF concluded that it would no longer fund Tout's operations and would exercise its rights as senior secured lender to foreclose on its collateral—all assets of Tout.

Tout's shareholders were informed in November of 2019 of WEF's intent to bid on these assets and that WEF had the right to credit bid its secured debt of approximately $7.5 million. Tout's shareholders were also informed

5

that they could also bid on the assets at the Auction. In advance of the Auction, a Notification of Disposition of Collateral at a Public Sale—providing details related to the Auction and a description of collateral—was also sent to Tout and other former secured creditors, and emailed to all known Tout shareholders. The Auction was also publicly advertised for three days in the San Jose Mercury News, the San Francisco Chronicle, the East Bay Times, and Sacramento Bee on December 5, 6, and 7. No action by the Tout board of directors was required, or taken, in relation to the Auction conducted by WEF.

WEF was the only bidder at the Auction and acquired Tout's assets for a credit bid in the amount of $3 million. No shareholders or other interest holders, including creditors, filed any lawsuits challenging the Auction held in December of 2019 or the conduct of Mr. Wildermuth until Mrs. Brown filed the instant verified shareholder-derivative suit on behalf of Tout against Mr. Wildermuth on November 25, 2022, alleging Breach of Duties, Corporate Waste, and Unjust Enrichment in connection with the Auction ("Derivative Action").

### B.    Negotiating the Stipulation of Settlement

Following the Court's denial of Mr. Wildermuth's motion to dismiss on August 22, 2023, the Parties have engaged in extensive settlement negotiations concerning, *inter alia*, the merits of Mrs. Brown's claims, as well

as Mr. Wildermuth's ability to satisfy any judgment that would potentially be entered against him in the Derivative Action. Through those negotiations, the Parties have determined that Tout and/or Mr. Wildermuth do not have liability or other insurance coverage available to fund Mr. Wildermuth's defense of the Derivative Action or any settlement or judgment that may potentially be entered in connection with the Derivative Action.

Mr. Wildermuth, in connection with the Parties' settlement negotiations, has provided, on a confidential basis, a personal financial statement itemizing his assets and liabilities, and further provided information concerning his anticipated obligations and liabilities in connection with a Chapter 11 bankruptcy proceeding titled *In re Kalos Capital, Inc.* currently pending in the Northern District of Georgia bearing case number 22-58326. Further, on June 29, 2023 WEF announced that it would accept no new assets and suspend redemptions. WEF's Board of Trustees voted to appoint a new advisor that that will oversee WEF's liquidation process.

Consistent with the foregoing, on November 30, 2023, the Parties entered into a Stipulation of Settlement. The Parties executed an Amended Stipulation of Settlement on April 1, 2024. The terms of the Amended Stipulation of Settlement will be effective only if approved by the Court.

### C.    Summary of Settlement

Below is a summary of the proposed settlement's key terms, which are further outlined below:

1) The proposed settlement is binding only if approved by Order of this Court;

2) Mr. Wildermuth will pay $50,000 in full and final settlement of all claims asserted or that could have been asserted in this lawsuit;

3) Because Tout is now defunct, the settlement funds will be transferred to a third-party administrator[2] who will be tasked with providing notice of the proposed settlement and distributing the settlement funds in accordance with applicable law;

4) Following the entry of an Order preliminarily approving the settlement, the Parties will seek dismissal of this action with prejudice;

5) Plaintiff will release all claims against Defendant, in her individual capacity and, upon approval by the Court, derivatively on behalf of Tout;

6) Standard no-liability-admission provisions are included; and

7) Plaintiff's counsel will apply to the Court for an award of reasonable attorneys' fees to be paid out of the gross settlement recovery, as well as a reasonable incentive award payable to Plaintiff for her work in connection with this case. As set forth in more detail below, Plaintiff will seek attorneys' fees in the amount of one-third (1/3) of the gross settlement amount, and an incentive award of $5,000 to be paid out of the gross settlement amount.

The Parties believe this proposed compromise, as articulated in the

Parties' Amended Stipulation of Settlement attached as **Exhibit B**, both

---

[2] The Parties intend to hire Ed Carduner, who has agreed to perform these services for a flat rate of $15,000, as discussed more fully in Section III.E, *infra*.

meets the requirements of Rule 23.1 and related authority and is in the best interest of Tout, its shareholders, and all Parties.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 23.1 (c) states, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." The review of a class action settlement is similar to that of a derivative action settlement, and as such, jurisprudence informing the settlement of class actions claims can be utilized to inform the settlement of this dispute.

A settlement should be approved if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984). The Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001). In determining whether the proposed Settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) likelihood of success at trial; (2) range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was

achieved. *Bennett*, 737 F.2d at 986; see also *In re Sunbeam*, 176 F. Supp. 2d at 329. In considering preliminary approval, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

## III.   THE PROPOSED SETTLEMENT AGREEMENT MERITS PRELIMINARY APPROVAL

The Parties submit that the proposed settlement merits preliminary approval for the reasons set forth in subsections III.A-C, *infra*. Certain components of the proposed settlement – including the Parties' plan for providing notice and administering the settlement, as well as Plaintiff's forthcoming requests for an incentive award and payment of attorneys' fees out of the settlement funds – are further explained in subsections D-G, *infra*.

### A.   The Terms of the Proposed Settlement Are Fair, Reasonable and Adequate

To avoid the burden and expense of further litigation, and without any admission or conclusion as to liability or wrongdoing, the Parties desire to reach a full and fair resolution of all claims. Accordingly, the Parties believe the underlying terms of the Proposed Settlement Agreement are fair, reasonable, and adequate, and further note that the law favors settlement.

Specifically, while both Plaintiff and Defendant feel strongly about their cases, Defendant possesses legitimate defenses that make the likelihood of

success uncertain. Furthermore, while Plaintiff has alleged significant potential damages, Defendant, as explained further below, does not possess the assets to pay a judgment in the range Plaintiff seeks, and it is likely that much more would be spent in attorneys' fees than collected from the Defendant.

Unlike a typical derivative case, here the company, Tout, is defunct, and Defendant has no insurance coverage that can be utilized to pay a settlement or judgment. In addition, because of the complexity of the case, it is likely that any litigation would be long and expensive, in addition to having an unpredictable outcome. Finally, both parties have evaluated applicable or anticipated claims and defenses, and have fully briefed a motion to dismiss that previewed major arguments for each side. As a result of this due diligence, and all the above facts, and those set forth below, the Parties believe the terms of the proposed settlement are fair, reasonable, and adequate. *See In re Fab Universal Corp. Shareholder Deriv. Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (explaining that approval of a derivative settlement pursuant to Rule 23.1 "requires consideration, in particular, of whether the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation.").

### B.   Plaintiff's Support of Settlement

Mrs. Brown believes that the proposed settlement is fair, adequate, and reasonable.

While Mrs. Brown maintains that she will ultimately prevail on all claims, there exists an inherent risk that she would not, particularly in light of the high bars to recovery that exist under controlling Delaware law and potential exculpatory language in Tout's operating and other agreements. Moreover, Mrs. Brown acknowledges that litigating the case through trial would require the expenditure of significant resources by the Court as well as the Parties. Significantly, as discussed above, there is no applicable insurance policy to rely on for payment of a judgment. Additionally, as satisfactorily shown by Mr. Wildermuth's counsel, Mr. Wildermuth does not appear to have assets sufficient to satisfy a judgment for the damages alleged in this case. Indeed, WEF has issued notice that it will be liquidating its assets, and Mr. Wildermuth's former brokerage firm, Kalos Capital, Inc., has filed for Chapter 11 protection, all as described *supra*.

In sum, despite Mrs. Brown's belief that she has a strong chance of success at trial, she is willing to settle this lawsuit on the terms set forth herein due to Mr. Wildermuth's personal financial situation, i.e., his inability to pay a significant sum, in judgment or otherwise, and the lack of applicable

insurance policy. Mrs. Brown therefore believes that the proposed settlement, especially in consideration of the aforementioned facts, is fair, adequate, and reasonable.

### C.  <u>Defendant's Support of Settlement</u>

The proposed settlement is fair, adequate, and reasonable. Mr. Wildermuth has strenuously denied any wrongdoing and liability. Mrs. Brown filed this shareholder derivative action against Mr. Wildermuth in his role as a director of Tout because Mr. Wildermuth allegedly made the decision in that role to liquidate the assets of Tout, and in doing so, purposely gave an unfair advantage to the Auction buyer of those assets, WEF, of which Mr. Wildermuth is the Fund Manager. At the time of the public Auction, WEF was Tout's largest secured creditor and was the only bidder at the Auction. The crux of the Complaint is that Mr. Wildermuth had a conflict of interest in his role as a Tout director when making the alleged decision to liquidate Tout's assets while also serving as WEF's Fund Manager. Mrs. Brown's three causes of action are predicated on this alleged conflict.

Mr. Wildermuth maintains that the Complaint misstates the nature of the Auction at the center of the dispute. Mr. Wildermuth maintains that he made no decision in his capacity as a Tout board member to liquidate Tout's assets or to hold a public auction sale to do so. Instead, WEF, Tout's largest

secured creditor, properly and legally conducted the Auction under Article 9 of the UCC—with full notice to Tout, its known shareholders, and former secured creditors, and publicly advertised in several newspapers—to foreclose on Tout's assets in accordance with WEF's existing security interest in all of Tout's assets. Despite the Auction being publicly advertised, and notice being provided to all known shareholders and former secured creditors in December 2019, none of Tout's shareholders, or any other interested third parties, filed any claims against Mr. Wildermuth or Tout related to the Auction until Mrs. Brown's lawsuit, which was filed nearly three years after the Auction.

Because Mr. Wildermuth made no decision in his capacity as a Tout director to liquidate Tout's assets, Mr. Wildermuth maintains that he will ultimately prevail on all claims, which are all alleged against him in his capacity as a director of Tout. Mr. Wildermuth contends that the Auction was legally initiated by WEF, and no action by the Tout board of directors was required, or taken, in relation to the Auction. Likewise, Mr. Wildermuth further maintains that WEF, a third party, did not have any obligation to abstain from exercising its contractual rights as a secured creditor, and the fact that Mr. Wildermuth was WEF's portfolio manager does not prevent WEF from exercising its independent contractual rights. Mr. Wildermuth believes he possesses additional defenses to Mrs. Brown's claims, including, but not

limited to, the fact that the claims are foreclosed by the exculpatory clause contained in Tout's Certificate of Incorporation.

Despite Mr. Wildermuth's defenses, there exists an inherent risk that Mr. Wildermuth would not prevail on merits, and litigating the case through trial and appeal would be costly and time consuming. Significantly, Tout's insurance coverage for its directors and officers expired prior the filling of this lawsuit, and thus Mr. Wildermuth is personally incurring the costs of the litigation and any settlement. Moreover, Mr. Wildermuth does not currently have the assets to satisfy a judgment anywhere near the damages alleged in this case, and continued litigation would further deplete Mr. Wildermuth's assets available for settlement.

Specifically, Kalos Capital, Inc. ("Kalos"), a firm founded by Mr. Wildermuth and his wife in 1997, filed for Chapter 11 bankruptcy in 2022 as a result of years of arbitrations stemming from conduct by GPB Capital Holdings LLC ("GPB"), a former New York-based private equity firm. GPB was accused by the SEC of orchestrating a Ponzi-like scheme that defrauded thousands of retail investors, and GPB's ex-chief executive, among other former GPB executives, were criminally indicted as a result. GBP sold private placements in its funds, and Kalos representatives had recommended such investments prior to learning of GPB's unlawful conduct. This resulted in

dozens of claims against Kalos and the many other firms that had recommended the GBP investments. Not only did Mr. Wildermuth incur significant liabilities to resolve the arbitrations associated with these GPB investments, Mr. Wildermuth's income from Kalos was also eliminated as a result of the arbitrations and subsequent bankruptcy.

In addition, WEF, another former source of income for Mr. Wildermuth, announced on or about June 29, 2023 that, as a result of a variety of factors—including a decline in assets under management, lack of investor interest, market conditions, including liquidity—that it would accept no new assets and suspend redemptions and ultimately appointed an advisor to oversee WEF's liquidation process. Accordingly, Mr. Wildermuth possesses minimal assets that could be utilized to satisfy any potential judgment or settlement.

In sum, despite his strong defenses, Mr. Wildermuth is willing to settle this lawsuit on the terms set forth herein due to his personal financial situation and the inherent costs and risks of litigation. The proposed settlement, especially in consideration of the aforementioned facts, is fair, adequate, and reasonable.

### D.  **Method of Notice**

Under Rule 23.1(c), notice of a derivative settlement is typically required. As set forth in the Parties' Response [ECF No. 42] to the Court's

February 7, 2024 [ECF No. 41], the Parties propose two concurrent methods of notice.

First, the Parties intend to publish the Notice of Settlement through a national press release distributed through "PR Newswire," attached as **Exhibit C**.

Additionally, the Parties will distribute that same notice by email, to be transmitted to the same email addresses included in the notice sent regarding the December 10, 2019 Auction of Tout's assets as described in the operative complaint. This list includes approximately 107 email addresses, which the Parties believe represents the approximate number of then-existing shareholders and thus the "number of shareholders entitled to notice", as requested by the March Order. Email is one of, if not the most, direct and cost-effective methods of notice, particularly in a case like this one, and conserving costs is a  paramount concern to ensure maximum shareholder recovery considering the settlement size.

### E.    <u>Independent Administrator</u>

The Parties propose that an independent administrator should be appointed to provide notice, coordinate communications with shareholders, and ultimately distribute settlement funds. The Parties propose Ed Carduner to serve as the independent administrator to perform these tasks.  In light of

the limited funds available in connection with this settlement, Carduner, who normally bills $500/hour for his services, has agreed to this engagement for a flat fee of $15,000. Carduner's curriculum vitae is attached as **Exhibit D**.

### F.  Plaintiff's Incentive Award

In the event Preliminary Approval is granted, Plaintiff will submit a separate and unopposed request to the Court for an Order approving an incentive award of $5,000. The Court's March Order directed the Parties to provide the Court with authority supporting an award of an incentive payment in a derivative case.

Courts have awarded, but are not required to award, payment of reasonable service or incentive awards in connection with derivative settlements pursuant to Rule 23.1. *See In re Resideo Techs. Inc. Deriv. Litig.*, 2024 WL 95194, at *5 (D. Minn. Jan. 9, 2024); *Rudi v. Wexner*, 2022 WL 1682297, *5 (S.D. Ohio May 16, 2022); *In re Wells Fargo & Co. Shareholder Deriv. Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020); *In re Fab*, 148 F. Supp. 3d at 285.

Notably, although the Eleventh Circuit has precluded incentive awards for plaintiffs in ***class action*** cases, that holding came in connection with a claim brought under ***federal law***—namely, the Telephone Consumer Protection Act. *Johnson v. NPAS Sols.*, LLC, 975 F.3d 1244, 1260 (11th Cir.

2020). Subsequent cases in the Eleventh Circuit, including at least one court in this District, have recognized that even post-*Johnson*, incentive awards may still be awarded where claims are, as here, premised on state law. *See Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1109–10 (M.D. Fla. 2023); *see also Roth v. GEICO Gen. Ins. Co.*, , 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020).

### G.    Award of Plaintiff's Attorneys' Fees and Costs

In the event Preliminary Approval is granted, Plaintiff will also file a separate and unopposed motion with the Court seeking approval of Plaintiff's attorneys' fees in the amount of one-third of the gross settlement amount, as well as reimbursement of reasonable costs actually incurred in connection with the prosecution of this case (*e.g.*, filing fees). Plaintiff will provide the Court with authority supporting the requested fee award in that separate filing; for now, Plaintiff simply advises the Court that fees will be requested and provides the Court with notice of the amount that will be sought, as directed in the March Order.

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with the Court's consideration of this Motion, the Parties request that the Court establish the following schedule of events:

- TBD: the Court issues an Order granting Preliminary Approval of the

19

Parties Settlement and approves the form of the Proposed Notice submitted herewith;

- Within five (5) business days of that Order, the independent administrator will email the Notice as approved by the Court to the list of email addresses that received the notice regarding the December 10, 2019 Auction of Tout's assets, and further, will publish notice on PR Newswire;

- Within forty-five (45) days from the date of electronic publication and emailed notice, objections must be lodged with the Court;

- Within thirty (30) days after the objection deadline, the Parties will file a Joint Motion for Final Approval of Settlement, along with responses to any objections that may have been filed. On or before this same date Plaintiff will also file a motion seeking approval of attorney's fees in the amount of 33% of the gross settlement amount, as well as a request for an incentive award for Plaintiff in the amount of $5,000;

- TBD: Final Approval Hearing for the Court to consider the foregoing motions and, if warranted, enter an Order granting Final Approval of the Parties' proposed settlement.

## V.     **CONCLUSION**

Accordingly, the Parties jointly and respectfully request that the Court (i) preliminarily approve the settlement and the retention of Ed Carduner as independent administrator; (ii) approve the proposed method of notice; (iii) approve the proposed schedule of events described above fixing deadlines for transmitting notice, as well as the filing of objections and responses thereto, the Parties' motion for final approval, and Plaintiff's motions for approval of attorneys' fees and payment of an incentive award; and (iv) Order any other such relief it deems just and proper.

Respectfully submitted,

Dated: April 2, 2024

*/s/ Daniel Centner (admitted pro hac vice)*
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
Daniel Centner
Grace Van Hancock (admitted pro hac vice)
935 Gravier Street, Suite 1600
New Orleans, LA 70112
504-523-2434
dcentner@peifferwolf.com
gvanhancock@peifferwolf.com

Ashlie Case Sletvold
6370 SOM Center Rd., Suite 108
Cleveland, OH 44139
Telephone: (216) 260-0808
Facsimile: (216) 258-0161
asletvold@peifferwolf.com

*Attorneys for Plaintiff Susan Brown*

21

*/s/ Alan M. Wolper*
Alan M. Wolper (Lead Counsel)
**ULMER & BERNE LLP**
500 W. Madison St., Ste. 3600
Chicago, IL 60661
(312) 658-6500
awolper@ulmer.com

Ashtyn N. Saltz *(admitted pro hac vice)*
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Tel.: (216) 583-7000
Fax: (216) 582-7001
asaltz@ulmer.com

*Attorneys for Defendant Daniel Wildermuth*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2024, the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Daniel Centner*
Daniel Centner